```
                    United States District Court
                      District of Massachusetts
_____
                                   )
ZURICH AMERICAN INSURANCE          )
COMPANY and AMERICAN GUARANTEE     )
& LIABILITY INSURANCE COMPANY,     )
         Plaintiffs,               )    Civil Action No.
                                   )    10-11190-NMG
         v.                        )
                                   )
WATTS REGULATOR CO., WATTS WATER   )
TECHNOLOGIES, INC., SPENCE         )
ENGINEERING COMPANY, INC., and     )
CIRCOR INTERNATIONAL, INC.,        )
         Defendants.               )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This breach of contract action arises from a retrospectively-rated insurance policy. Pending before the Court is plaintiffs' motion to dismiss and strike defendants' second amended counterclaims.

## I. Factual Background

Plaintiffs Zurich American Insurance Company, as successor-in-interest to Zurich Insurance Company, and American Guarantee and Liability Insurance Company (collectively "Zurich") bring suit against Watts Regulator Company and Watts Water Technologies, Inc., formerly known as Watts Industries, Inc. (collectively "Watts"), as well as Spence Engineering Company, Inc. ("Spence") and CIRCOR International, Inc. ("CIRCOR") for

-1-

breach of contract.

Zurich is an insurance company incorporated in New York with its principal place of business in Illinois.  Watts is a Massachusetts corporation with its principal place of business in Massachusetts.  Spence and CIRCOR are both Delaware corporations with a principal place of business in Massachusetts.

Pursuant to agreements between Zurich and Watts, Zurich provided Watts and certain affiliated entities with workers' compensation, general liability and business auto insurance coverage for the policy period of June 30, 1985 to June 30, 1986 ("the Insurance Program").  Because the Insurance Program is retrospectively-rated, Watts paid an initial premium and Zurich subsequently performed periodic retrospective adjustments based on claims actually incurred and/or paid by Zurich.  Thus, at the time of each adjustment, either Watts was required to pay an additional amount to Zurich or Zurich was required to return an excess amount to Watts.

Zurich alleges that, although it has complied with its obligations under the Insurance Program, Watts has failed to pay Zurich for retrospective adjustments in the aggregate amount of $816,185.  From October 21, 2008 to July 15, 2010, Zurich and Watts had a "standstill" agreement that temporarily suspended any claims related to the unpaid invoices.  The day after that agreement expired, Zurich brought the instant suit.

In two counterclaims, Watts alleges that Zurich seeks to collect payment on the so-called "Sixteenth Adjustment" (i.e. the retrospective adjustment for losses incurred in 2001) in the amount of $6,214 plus interest, even though Zurich previously informed Watts that particular adjustment was voided and Watts did not have to pay that amount. Zurich also allegedly refuses to provide individualized information to substantiate the "Seventeenth Adjustment" (i.e. losses incurred in 2002) in the amount of $102,078 and the "Nineteenth Adjustment" (i.e. losses incurred in 2004) in the amount of $513,882, even though Zurich had previously provided such supporting information for prior adjustments.

**II. Procedural History**

On July 16, 2010, Zurich brought suit against Watts, alleging in the sole count of the Complaint that Watts breached the Insurance Program and owed Zurich the amount of $816,185. Watts timely responded by filing an answer and asserting six counterclaims which were subsequently amended twice.

In October, 2010, with the assent of Watts, Zurich filed an Amended Complaint which named Spence and CIRCOR as additional defendants. The Amended Complaint alleges breach of contract by Watts (Count I) and breach of contract by Spence and CIRCOR under alternative theories of contract modification and novation (Count II) or successor liability (Count III). Watts timely responded

by filing an answer and amending its counterclaims to assert a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A") against Zurich (Counterclaim I) and for a declaratory judgment (Counterclaim II). Spence and CIRCOR filed an answer.

In November, 2010, Zurich moved to dismiss Counterclaim I pursuant to Fed. R. Civ. P. 12(b)(6) and to strike Counterclaim II pursuant to Fed. R. Civ. P. 12(f). Watts has opposed the motion which is currently pending before the Court.

### III. **Motion to Dismiss Counterclaim I**

#### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a counterclaim must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the counterclaim and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the counterclaim as true and draw all reasonable inferences in the counterclaimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st

Cir. 2000). If the facts in the counterclaim are sufficient to state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a counterclaim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id. Accordingly, a counterclaim does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

**B. Application**

In its first counterclaim, Watts alleges that Zurich has engaged in unfair and deceptive practices in violation of Chapter 93A. Zurich moves to dismiss that counterclaim for failure to state a claim. The Court accepts all factual allegations in the counterclaims as true and draws all reasonable inferences in the counterclaimant's favor. See Langadinos, 199 F. 3d at 69.

Chapter 93A proscribes those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes businesses to sue one another for engaging in such practices. Mass. Gen. Laws ch. 93A, §§ 2, 11. Whether a particular set of circumstances are unfair

-5-

or deceptive under Chapter 93A is a question of fact. Incase, Inc. v. Timex Corp., 421 F. Supp. 2d 226, 239 (D. Mass. 2006).

In the context of disputes among businesses, where both parties are sophisticated commercial players, the "objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." Vision Graphics v. E.I. Dupont De Nemours, 41 F. Supp. 2d 93, 101 (D. Mass. 1999) (quoting Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)); Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 822 (Mass. 1991); Madan v. Royal Indemnity Co., 532 N.E.2d 1214, 1217 n.7 (Mass. App. Ct. 1989) (citations omitted) (noting higher standard of unfairness under § 11). Thus, to prove a violation of Chapter 93A, Watts must show that Zurich's conduct fell within "the penumbra" of some "established concept of unfairness" or was "immoral, unethical, oppressive or unscrupulous". See Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (citations and internal quotations omitted).

It is well settled that "the mere breach of a contract, without more, does not amount to a [Chapter] 93A violation." Madan, 532 N.E.2d at 1217 (citation omitted); see also Killian Corp. v. Murphy, 2010 WL 4244829, *4-5 (Mass. Super. Aug. 6, 2010). In order to prevail on a Chapter 93A claim premised on a breach of contract, the breach must be "so egregious as to

possess an extortionate quality that gives it the rancid flavor of unfairness." Goldstein v. Enanta Pharm., Inc., 2011 WL 1795282, *1 (Mass. App. Ct. May 12, 2011) (citation and internal quotations omitted). In other words, such a claim will fail if "there was no ulterior motive, no coercive or extortionate objective." Killian, 2010 WL 4244829 at *5 (citation omitted) (listing cases rejecting Chapter 93A claims based on breach of contract). Indeed, "a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [Chapter] 93A claim is made." Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998).

Here, Watts alleges Zurich violated Chapter 93A by 1) seeking to collect certain amounts (i.e. the Sixteenth, Seventeenth and Nineteenth Adjustments) that Zurich previously represented were not due and 2) refusing to provide supporting documentation to substantiate the amounts due in certain invoices.

With respect to the purportedly voided adjustments, the exhibits attached by Watts to its counterclaims demonstrate that although certain invoices were revised and/or voided, the total amount due remained the same. Such exhibits belie Watts' allegations. See Clorox Co. P.R. v. Proctor & Gamble, 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted) ("It is a well-settled rule that when a written instrument contradicts allegations in

the complaint to which it is attached, the exhibit trumps the allegations.").

Although certain misrepresentations, such as those consciously made for use as a competitive weapon, may be "so seriously deceptive and harmful" as to raise the possibility of recovery under Chapter 93A, see Giuffrida v. High Country Investor, Inc., 897 N.E.2d 82, 95 (Mass. App. Ct. 2008) (citations omitted), the alleged misrepresentations here do not rise to that level.  Watts alleges that Zurich misrepresented whether certain invoices were void but fails to allege any facts to suggest that Zurich made the misrepresentations as part of its business strategy, to gain competitive advantage or for some other coercive or extortionate objective.

Moreover, Watts is unable to articulate the harm it has suffered, if any, as a result of Zurich's actions, other than the costs of the present litigation.  Litigation costs, such as attorney's fees, for the instant action are insufficient to constitute a loss of money or property within the meaning of Chapter 93A, § 11.  See Tech Plus, Inc. v. Ansel, 793 N.E.2d 1256, 1264-65 (Mass. App. Ct. 2003).

With respect to Zurich's failure to provide supporting documentation, Watts asserts that Zurich engaged in an unfair and deceptive practice by refusing to provide "backup" information at Watts' request.  Although Watts, in its opposition to the motion

to dismiss, argues that Zurich has a contractual obligation to provide that information, the counterclaims themselves fail to allege such a contractual duty.  Even if the contract did include such an obligation, the fact that Zurich, in good faith, plausibly contends that Watts has no contractual right to that information is sufficient to rebut the alleged violation of Chapter 93A.  See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1160 (Mass. 1989) (finding good faith reliance on a plausible, even if ultimately incorrect, interpretation of a contract does not constitute a Chapter 93A violation).

In sum, there are insufficient facts alleged from which a finder of fact could find that Zurich acted in bad faith or violated an "established conception of unfairness".  To the contrary, this case appears to involve "an ordinary contract dispute" between sophisticated commercial players.  See Kobayashi v. Orio Ventures, Inc., 678 N.E.2d 180, 189 (Mass. App. Ct. 1997) (citation omitted).  Accordingly, Counterclaim I will be dismissed.

### IV. Motion to Strike Counterclaim II

#### A. Legal Standard

Pursuant to Fed. R. Civ. P. 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  A "redundant" matter is one that "consists of

allegations that constitute a needless repetition of other averments." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998) (citations omitted). Although motions to strike are generally disfavored, the Court possesses considerable discretion in resolving such a motion. Soni v. Boston Med. Ctr. Corp., 683 F. Supp. 2d 74, 92 (D. Mass. 2009) (citation omitted); see also Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988) (citations omitted). Motions to strike are "rarely granted absent a showing of prejudice to the moving party." Hayes v. McGee, 2011 WL 39341, *2 (D. Mass. Jan. 6, 2011) (citation omitted).

**B.  Application**

In its second counterclaim, Watts seeks a declaratory judgment with respect to Zurich's rights and obligations under the Insurance Program, including a declaration that Watts is not liable to Zurich for certain retrospective adjustments. Zurich contends that the counterclaim and declarations sought thereby are redundant because they merely "repackag[e] denials and defenses".

This Court finds little controlling authority on the matter but notes that other courts have allowed, without a showing of prejudice, motions to strike

> repetitious and unnecessary pleadings, such as a
> counterclaim that merely restates an affirmative defense, or
> which seeks the opposite effect of the complaint.

In re Feeley, 393 B.R. 43, 51 (Bankr. D. Mass. 2008) (citing and quoting Lincoln Nat'l Corp. v. Steadfast Ins. Co., 2006 WL 1660591, *2 (N.D. Ind. June 9, 2006) (listing cases)); see also Tenneco Inc. v. Saxony Bar & Tube, Inc., 776 F.2d 1375, 1379 (7th Cir. 1985) (noting repetition occurs when one party seeks to enforce a contract while opposing party seeks a declaration of the contract's meaning). Allowing such a motion may serve to expedite the case by removing "unnecessary clutter from the case". Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Moreover, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court has complete discretion in determining "whether and when" to entertain a counterclaim for declaratory judgment. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (noting district court has discretion under Declaratory Judgment Act whether to exercise jurisdiction); U.S. Liability Ins. Co. v. Selman, 70 F.3d 684, 694 & n.9 (1st Cir. 1995) (upholding district court's withholding of a declaration with respect to the limit on insurance policy and noting "courts have no obligation to answer hypothetical questions").

Here, although Counterclaim II enumerates seven specific declarations sought, several are duplicative of each other, many

-11-

reiterate affirmative defenses asserted and all address issues already before the Court by virtue of Zurich's Amended Complaint and Watts' Answer. Because of the redundancy, the Court will, therefore, allow plaintiff's motion to strike Counterclaim II.

**ORDER**

In accordance with the foregoing, plaintiffs' motion to dismiss and strike defendants' Watts Regulator Co. and Watts Water Technologies, Inc. second amended counterclaims (Docket No. 34) is **ALLOWED**.

**So ordered.**

                                          /s/ Nathaniel M. Gorton
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated June 10, 2011